2020 IL App (1st) 19-2404-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
December 22, 2020

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| WILMINGTON TRUST, N.A., as Successor Trustee to CITIBANK, N.A., as Trustee for BEARS STERNS ALT-A TRUST, 2007-2, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois, Chancery Division. |
| Plaintiff-Appellee, | ) ) | No. 16 CH 4484 |
| v. | ) ) | |
| EWA JELEN, | ) ) | The Honorable William Sullivan, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Cobbs and Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court properly granted summary judgment in favor of the bank, where the record revealed no genuine issues of material fact regarding the propriety of the acceleration notice sent to the lender. For this same reason, the trial court did not abuse its discretion in approving the order of sale.

¶ 2     This appeal arises from a March 2016 mortgage foreclosure action filed by the plaintiff-mortgagee, Wilmington N.A., as successor trustee to Citibank, N.A., as trustee for Bears Stern, Alt-A Trust, 2007-2 (Wilmington) against the defendant-mortgagor, Ewa Jelen (Jelen). On appeal, Jelen challenges the trial court's grant of summary judgment in favor of Wilmington, and

the trial court's subsequent approval of the sale of the subject property to Wilmington.  Jelen

argues that summary judgment was improper because there remains a genuine issue of material

fact as to whether Wilmington sent her an adequate notice of default and acceleration pursuant to

paragraph 22 of the subject mortgage.  For the following reasons, we affirm.

¶ 3                                    II.  BACKGROUND

¶ 4        The record reveals the following relevant facts and procedural history.  On December 19,

2006, Jelen, as mortgagor, executed a mortgage in the amount of $315, 200 for the property

located at 1906 East Camp McDonald Road, Mount Prospect, Illinois 60056 (the property) with

the original mortgagee MidAmerica Bank, FSB (MidAmerica).  Paragraphs 15 and 22 of that

mortgage document are relevant for purposes of this appeal.

¶ 5        Paragraph 22, entitled "Acceleration; Remedies," states in full:

>     "Lenders shall give notice to Borrower prior to acceleration following Borrower's breach
>
> of any covenant or agreement in this Security Instrument (but not prior to acceleration under
>
> Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the
>
> default; (b) the action required to cure the default; (c) a date, not less than 30 days from the
>
> date the notice is given to Borrower, by which the default must be cured; and (d) that failure
>
> to cure the default on or before the date specified in the notice may result in acceleration of
>
> the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of
>
> the Property. The notice shall further inform Borrower of the right to reinstate after
>
> acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default
>
> or any other defense of Borrower to acceleration and foreclosure. If the default is not cured
>
> on or before the date specified in the notice, Lender at its option may require immediate
>
> payment in full of all sums secured by this Security Instrument without further demand and

may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

¶ 6     In addition, paragraph 15, titled "Notices" provides that "all notices" given by the borrower to the lender "must be in writing," and "shall be deemed to have been given" to the borrower when "mailed by first class mail or when actually delivered" to the borrower's "notice address if sent by other means." In addition, "[t]he notice address" is designated as the borrower's property address, unless the borrower has designated a substitute address "by notice to the lender."

¶ 7     On August 27, 2010, Jelen executed a loan modification agreement with the new mortgagee, PNC Mortgage (PNC).

¶ 8     On March 30, 2016, Wilmington filed a complaint to foreclose the mortgage against Jelen, alleging that she was in default on her mortgage payments since August 1, 2014, for the amount of $381,845.98. The parties agree that this was the second mortgage foreclosure action filed by Wilmington in the instant matter. The first action was filed on April 14, 2015, and voluntarily dismissed by Wilmington on March 22, 2016, eight days prior to the filing of the instant action. See *Wilmington Trust, N.A. v. Jelen*, No. 2015 CH 6194 (hereinafter *Wilmington I*).

¶ 9     On October 17, 2016, Jelen filed her answer and affirmative defenses. Relevant to this appeal, as one of her affirmative defenses, Jelen alleged that Wilmington had failed to meet a condition precedent to the mortgage foreclosure action by failing to provide her with the requisite notice specified under paragraph 22 of the mortgage document. Citing to *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, Jelen argued that such a notice is a condition precedent

to filing a mortgage foreclosure action and that "any notice" sent to her "did not contain the specific notice and language required by paragraph 22 of the mortgage."

¶ 10    Jelen also filed her counterclaim,[1] alleging a violation of the Fair Debt Collection Practices Act (FDCPA) (15 USC § 1692 *et seq.* (2014)).  According to the counterclaim, in contravention of section 1692(c)(a)(2) of the FDCPA (15 USC § 1692(c)(a)(2) (2014)), Wilmington directly corresponded with her even though she was represented by counsel, who appeared on her behalf during the pendency of the original foreclosure proceedings.

¶ 11    On November 14, 2016, Wilmington filed its response to Jelen's affirmative defenses denying that it had failed to provide her with proper notice of acceleration.  In addition, Wilmington filed a motion to dismiss Jelen's second counterclaim alleging that Jelen had failed to specify when and what type of improper direct communication had occurred.  On March 8, 2017, the trial court dismissed Jelen's second counterclaim without prejudice, permitting her to replead it.

¶ 12    On April 5, 2017, Jelen filed her amended counterclaim alleging that the correspondence in question occurred on March 3, 2016, when she was sent a letter regarding the collection of the debt she allegedly owed.  Jelen contended that when this letter was sent, Wilmington was aware that she was represented by counsel because counsel had appeared on her behalf at the original mortgage foreclosure proceedings.  Jelen therefore sought court costs, attorney's fees and unspecified damages.  The March 3, 2016, letter was attached to the counterclaim.  It is from a debt collection law firm who obtained Jelen's account from PNC.

---

[1] The record reveals that Jelen filed two counterclaims.  The first was dismissed by agreed order of the parties and is not relevant to this appeal.

¶ 13    On April 10, 2018, Wilmington filed a motion for summary judgment arguing that it was entitled to relief as a matter of law. Relevant to this appeal, Wilmington contended that it had provided Jelen with the requisite default and acceleration notices under paragraphs 15 and 22 of the mortgage. In support, Wilmington attached an affidavit of Marrisa Burris, Wilmington's servicer, with personal knowledge of PNC's business practices and records. Burris averred that it was standard practice at PNC to mail a grace-period default notice (grace period notice) in conformity with section 15-1502.5 of the Mortgage Foreclosure Act (735 ILCS 5/15-1502.5 (West 2014)) to a borrower whose loan had been accelerated after April 1, 2009. According to Burris, PNC's files reflected that three such separate grace-period default notices were sent to Jelen on September 12, 2014, October 2, 2014, and October 19, 2015. All three were attached as exhibits to Burris's affidavit. The notices are identical and informed Jelen that her loan was in default and that she had 30-days grace period to obtain housing counseling before any action would be taken against her on the default.

¶ 14    In her affidavit, Burris further averred that it was standard practice at PNC to mail a notice of default and acceleration (acceleration notice) to each borrower whose loan had been accelerated. Burris stated that according to PNC's files two such separate acceleration notices were sent to Jelen on October 2, 2014, and October 19, 2015. Both acceleration notices were attached as exhibits to her affidavit.

¶ 15    The first, October 2, 2014, notice informed Jelen of her default under the loan, and advised her that she could correct the default by paying $9131.15 on or before November 1, 2014. According to the notice, in the event that Jelen failed to make this payment by the designated date, PNC could: (1) exercise its right "to accelerate the full balance due" on the loan

5

(*i.e.*, all sums would be owed immediately); and (2) refer the matter to its foreclosure counsel and seek legal action in foreclosing the mortgage.

¶ 16    The second, October 19, 2015, letter was identical in substance to the first, except that the amount defaulted and requested was $48,330.43 and the due date was designated as November 18, 2015.

¶ 17    On June 26, 2018, Jelen filed her response to Wilmington's motion for summary judgment, asserting that judgment should be denied because there remained genuine issues of material fact as to whether she was provided with a proper and timely acceleration notice as required under paragraph 22 of the mortgage. Relevant to this appeal, Jelen maintained that the October 19, 2015, acceleration notice was inaccurate and therefore deficient. Specifically, she asserted that this notice informed her that if she did not cure her default by November 18, 2015, her loan *could* be accelerated and her account *could* be referred to foreclosure counsel. However, according to Jelen, at this point in time, her loan had already been accelerated and the matter had already been pending in court on Wilmington's original (and subsequently voluntarily dismissed) foreclosure action. See *Wilmington I*, No. 2015 CH 6194. As such, Jelen argued that in the very least there remained genuine issues of material fact as to whether she was given adequate and timely notice of her loan's acceleration.

¶ 18    In its reply, Wilmington argued that because the instant mortgage foreclosure action was not filed until March 30, 2016, both the October 2, 2014, and the October 19, 2015, acceleration notices were timely since they were sent more than 30 days after the requisite grace period had expired and more than 30 days before the initiation of the instant lawsuit.

¶ 19    On August 9, 2018, the trial court entered summary judgment in favor of Wilmington. The court also entered a judgment of foreclosure and sale.

¶ 20      On September 10, 2018, Jelen filed a motion to reconsider attempting to clarify her argument regarding the inadequacy of Wilmington's acceleration notice. Therein, she reiterated that because the October 19, 2015, acceleration notice was sent to her during the pendency of Wilmington's original mortgage foreclosure action, by its very terms, it was contradictory and inaccurate. Moreover, for the first time, Jelen argued that this acceleration notice was "an improper attempt at a direct communication with a [defendant] represented by counsel in a pending litigation." Jelen pointed out that after it had realized its mistake, Wilmington voluntarily dismissed its original action and then within weeks filed the instant foreclosure claim. Jelen argued that in order to provide her with adequate notice of acceleration, for purposes of the instant lawsuit, Wilmington was required to send her a new acceleration notice after voluntarily dismissing its 2015 action. According to Jelen, without any such notice provided to her 30 days prior to the initiation of the instant lawsuit, Wilmington should not have been permitted to proceed.

¶ 21      On December 12, 2018, the trial court denied Jelen's motion to reconsider. A judicial sale was held on March 10, 2019, wherein Wilmington purchased the property for $495,910.92. On April 19, 2019, Wilmington filed a motion for order approving sale, which was granted on October 23, 2019. Jelen now appeals.

¶ 22                                II. ANALYSIS

¶ 23      On appeal, Jelen first argues that the trial court erred in granting summary judgment in favor of Wilmington where there remains a genuine issue of material fact as to whether Wilmington sent her the requisite notice of acceleration prior to the actual acceleration and the initiation of the instant lawsuit as is required under paragraph 22 of the mortgage. She further argues that because the subsequent foreclosure order and the sale of the property arose from the improper

grant of Wilmington's motion for summary judgment all those subsequent orders, including the order approving the sale should be vacated and the matter reversed and remanded for further proceedings.

¶ 24     Before considering the merits of Jelen's claim, we must first address Wilmington's contention that Jelen has waived or forfeited this issue for purposes of appeal by failing to argue it prior to her response to Wilmington's motion for summary judgment.

¶ 25     At the outset, we note that our courts have repeatedly cautioned parties not to confuse the terms "waiver" and "forfeiture" as they have very distinct legal meanings. "Waiver" means the voluntary relinquishment of a known right. *Maniez v. Citibank, FSB*, 404 Ill. App. 3d 941, 947-48 (2010). It arises from an affirmative act, and is consensual. *Id.*, at 948. "Forfeiture," on the other hand, occurs when a party seeks to raise an issue on appeal that it failed to raise in the lower court. *Id.* Notwithstanding the distinction between "waiver" and "forfeiture," we find that neither applies in this case.

¶ 26     First, contrary to Wilmington's position, Jelen sufficiently alleged the inadequacy of the acceleration notice pursuant to paragraph 22 as part of her affirmative defenses. While she did not expressly allege all the facts necessary to explain the inadequacy and untimeliness of that acceleration notice until her response to Wilmington's motion for summary judgment, she labeled her affirmative defense as Wilmington's failure to meet a condition precedent to the mortgage foreclosure action and alleged that the notice was improper under paragraph 22. Construing, as we must, her pleadings liberally we conclude that she sufficiently placed Wilmington on notice of her affirmative defense so as not to have relinquished her right to raise this argument during the summary judgment phase of the proceedings. See *Labovitz v. Dolan*, 189 Ill. App. 3d 403, 414 (1989) ("No pleading is bad in substance which contains such

information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet.")

¶ 27    What is more, there can be no doubt that once this argument was raised during the summary judgment proceedings it was considered by the trial court.  In fact, after the grant of summary judgement, the issue was once again argued by the parties during the motion to reconsider.  Accordingly, neither waiver nor forfeiture bar our consideration of this issue on appeal.  See *Maniez*, 404 Ill. App. 3d at 948; see also *Grimes v. Sage Telecom Communications L.L.C.*, 2018 IL App (1st) 171455, ¶ 23.

¶ 28    Turning to the merits, we begin by noting that summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005 (West 2014); see also *Carlson v. Chicago Transit Authority*, 2014 IL App (1st) 122463, ¶ 21; *Fidelity National Title Insurance Company of New York v. West Haven Properties Partnership*, 386 Ill. App. 3d 201, 212 (2007) (citing *Home Insurance Co. v. Cincinnati Insurance Co.,* 213 Ill. 2d 307, 315 (2004)); *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007).  In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings and evidentiary material in the record in the light most favorable to the nonmoving party and strictly against the moving party.  *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002); see also *Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 697 (2004). A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts.  *Morrissey v. Arlington Park Racecourse*, *LLC*, 404 Ill. App. 3d 711, 724 (2010); see also *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107,

114 (1995). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.,* 309 Ill. App. 3d 313, 328 (1999). Our review of the trial court's entry of summary judgment is *de novo* and we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. See *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 43; see also *Ragan v. Columbia Mutual Insurance Co.,* 183 Ill. 2d 342, 349 (1998); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 102 (1992).

¶ 29    On appeal, the parties agree that the giving of the notice of default and acceleration required by paragraph 22 of the mortgage was a condition precedent to Wilmington's right to file the instant foreclosure action. See *Credit Union 1 v. Carrasco,* 2018 IL App (1st) 172535, ¶ 15 (citing *CitiMortgage, Inc. v. Bukowski,* 2015 IL App (1st) 140780, ¶ 16; *Accetturo,* 2016 IL App (1st) 152783, ¶ 33). A condition precedent is a condition in which performance by one party is required before the other party is obligated to perform. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 668 (2007). When contracts contain express conditions precedent, strict compliance with such conditions is required. *Id.* A contract containing a condition precedent does not become enforceable or effective until the condition is performed or the contingency occurs. *Id.*

¶ 30    Thus, the question on appeal is whether the summary judgment record shows that a genuine issue of material fact exists about whether the acceleration notice was given prior to the filing of this action. For the reasons that follow, we find that the record is devoid of any such issue of material fact.

¶ 31    The record uncontrovertibly establishes that Jelen received two separate acceleration notices

on October 2, 2014, and on October 19, 2015. Paragraph 22 of the mortgage document, required that each of these notices specify: (1) the default; (2) the action required to cure the default; (3) a date, not less than 30 days from the date the notice was sent, by which the default had to be cured; and (4) that failure to cure the default on or before the date specified in the notice could result in acceleration of the loan, foreclosure by judicial proceedings, and the sale of the property. Jelen does not dispute that the substance of both the October 2, 2014, and October 19, 2015, notices complied with the requirements of paragraph 22. Nor can there be any doubt that both notices were sent 30 days prior to the initiation of the instant lawsuit on March 30, 2016, and therefore provided Jelen with timely notice of the acceleration.

¶ 32        Instead, on appeal Jelen solely contends that the October 19, 2015, notice was invalid because it was filed after the acceleration already took place. She argues that because the October 2, 2014, acceleration notice was filed before the initiation of the original lawsuit, after which the loan was accelerated, the October 19, 2015, acceleration notice issued during the pendency of that original foreclosure action and advising her that her loan would be accelerated if the default was not cured within 30 days, created confusion as to whether the loan had or had not already been accelerated. She contends that this confusion was further compounded when Wilmington voluntarily dismissed the original foreclosure action and then within days filed the instant foreclosure action without any new notice of acceleration. Accordingly, she contends that the October 19, 2015, notice was invalid and that a new notice was required before the filing of the instant lawsuit.

¶ 33        We, however, find Jelen's argument misplaced. Contrary to Jelen's position, nothing in

paragraph 22 of the mortgage requires the lender to issue a notice every time it initiates a new foreclosure proceeding. Rather, paragraph 22 only requires that the mortgagor give the borrower proper notice prior to accelerating the debt.

¶ 34 Jelen cites to no authority for the proposition that sending a second notice of acceleration during the pendency of a prior foreclosure action renders either the first notice or the second notice improper for any subsequent foreclosure action filed. Nor could she.

¶ 35 While we have found no Illinois precedent directly on point, in *Fid. Bank v. Krenisky,* 72 Conn. App. 700, 708 (2002), the Connecticut Appellate Court held that under similar circumstances, and under mortgage language substantively identical to paragraph 22, "the plaintiff was required only to give notice of default to the defendant prior to accelerating the entire debt." *Id*. at 708. As the Connecticut court explained:

> "The plaintiff provided such a notice before accelerating the debt and commencing its first foreclosure action; no further notice, such as a subsequent notice of default, notice of acceleration or foreclosure, was required prior to the plaintiff commencing its second foreclosure action. By instituting its first foreclosure action, the plaintiff validly exercised its right to accelerate the entire mortgage debt. [Citation.]" *Id*.

The court further held that the dismissal of the first foreclosure action "did not wipe the slate clean" for the defendants, because they had already been notified of their default and the mortgage debt had already been accelerated. *Id*. at 708-09. The court therefore concluded that because the mortgage required no additional notice of default prior to the plaintiff's commencement of its second foreclosure action, the trial court had properly granted summary judgment in favor of the plaintiff. *Id*.

¶ 36 In the present case, it is undisputed that Jelen was placed on notice of the default and

acceleration on October 2, 2014, prior to the initiation of the original lawsuit and that the debt was then accelerated at the commencement of that action. Accordingly, just as in *Krenisky*, Jelen was placed on notice of both her debt and the acceleration of that debt long before the initiation of the instant lawsuit. Therefore, no new notice of acceleration was required after October 2, 2014.

¶ 37     Jelen attempts to distinguish *Krenisky* by noting that in that case the plaintiff never sent the defendants a second notice of acceleration prior to the dismissal of the original foreclosure action, and therefore never muddied the record. She argues that in contrast, in the instant case, Wilmington's second October 19, 2015, acceleration notice contradicted and invalidated the October 2, 2014, notice, and therefore the acceleration itself.

¶ 38     Even if we were to agree with Jelen that the initial October 2, 2014, notice was somehow invalidated by the subsequent one, which we do not, we would nonetheless hold that any defects arising from the fact that the October 19, 2015, notice was sent during the pendency of the first mortgage foreclosure action were technical and did not prejudice Jelen.

¶ 39     Our courts have repeatedly held that "a technical defect in the notice sent to a mortgagor will not automatically warrant a dismissal of a foreclosure action." *U.S. Bank, N.A. v. Gold*, 2019 Ill. App (2nd) 180451, ¶ 11; see also *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 15; see also *Accetturo*, 2016IL App (1st) 152783, ¶ 42. Moreover, "where the mortgagor does not allege any prejudice resulting from a technical defect in the notice, dismissal to permit new notice would be 'futile.' " *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27; see also *Gold*, 2019 Ill. App. (2nd) 180451, ¶ 11.

¶ 40     In the present case, Jelen has not alleged any prejudice stemming from the fact that the

second October 19, 2015, notice was filed during the pendency of the original mortgage foreclosure proceedings. The only argument she makes in this vein is that the amount stated as due and owing in the October 19, 2015, notice was different than the amount stated in the original October 2, 2014, notice and that these differing amounts somehow created "incredible confusion" as to the actual amount due and owing under the note. Jelen, however, nowhere referenced this "incredible confusion" in her affirmative defenses, her response to the motion for summary judgment or her motion to reconsider. What is more, it is unclear how differing amounts in letters sent a year apart, where payments and advancements for taxes and insurance would continue to accrue and increase the amount due, would create "incredible confusion."

¶ 41    Accordingly, for the aforementioned reasons we find that there is no genuine issue of material fact as to whether Wilmington fulfilled the condition precedent of providing Jelen with the requisite and timely notice of the debt's acceleration prior to initiating the instant lawsuit. We therefore conclude that summary judgment in favor of Wilmington on the foreclosure action was proper.

¶ 42    Because Jelen's argument regarding the impropriety of the trial court's order approving the sale of the property is solely premised on the propriety of the summary judgment order, for the reasons already stated we find that the trial court did not abuse its discretion in approving that sale. See *Bayview Loan Servicing, L.L.C. v. 2010 Real Estate Foreclosure L.L.C.*, 2013 IL App (1st) 120711, ¶ 32 (A reviewing court will not disturb the trial court's decision to confirm a judicial sale, "absent an abuse of discretion.")

¶ 43    Finally, in her brief, in a two-sentence argument, unsupported by any citation to authority, Jelen asks this court to remand this matter to the trial court for the adjudication of her counterclaim brought pursuant to the FDCPA (15 USC § 1692(c)(a)(2) (West 2014)). However,

14

Jelen points to nowhere in the record that would indicate that her counterclaim is not still pending before the trial court.  A counterclaim is a separate and distinct substantive cause of action that must be both legally and factually sufficient to set forth a recognized cause of action. *Carmichael v. Union Pacific R.R. Co.*, 2019 IL 123853, ¶ 26 (citing *Nuccio v. Chi. Commodities, Inc.*, 257 Ill. App. 3d 437, 443 (1993)).  The record before us contains no order dismissing or disposing of Jelen's counterclaim.  As such, the counterclaim remains pending before the trial court and Jelen is able to litigate it without any further order from this court.[2]

¶ 44                                III.  CONCLUSION

¶ 45        For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 46        Affirmed.

---

[2] In coming to this conclusion, we have considered our own jurisdiction, and find that pursuant to Illinois Supreme Court Rule 307(a)(4), we have jurisdiction to resolve the issues raised in this appeal, regardless of that pending counterclaim.  See Ill. S. Ct. R. 307(a)(4) (eff. Nov. 1, 2017) ("An appeal may be taken *** from an interlocutory order of court *** placing or refusing to place a mortgagee in possession of mortgaged premises.")